Robert Harrold KINKEAD and Joyce Kinkead, His Wife,
Appellants *v.* Carol Ann Kinkead SPILLERS and Jeannine Lea
Kinkead Mathis, Appellees; Boatmen's National Bank of
Arkansas, Intervenor

96-1433                                        940 S.W.2d 437

Supreme Court of Arkansas
Opinion delivered March 17, 1997

*Joyce Kinkead,* for appellant/*pro se.*

*Tommy E. Smith,* for appellees.

*Sandra Elizabeth Jackson,* for intervenor.

TOM GLAZE, Justice. On September 27, 1994, appellees
Carol Kinkead Spillers and Jeannine Kinkead Stroud filed a peti-
tion for partition. They along with their brothers Harold and
Robert had obtained a one-fourth interest in the property. Har-
old died, leaving his one-fourth interest to Carol and Jeannine, so
that the sisters each owned a three-eighths interest in the property
at the time the partition action was filed. Carol and Jeannine
requested that the property be sold, but Robert wanted the prop-

erty to be divided in kind. Robert's wife, Joyce, having a dower interest, was made a party to the action.[1]

The chancellor appointed three commissioners, who reported that the property could not be partitioned in kind. On December 27, 1995, the chancellor confirmed the commissioners' report and directed the property sold. The bid offered by Carol and Jeannine was the highest at $155,000, and on May 31, 1996, the chancellor entered an order confirming the sale and directed the chancery clerk to execute a commissioner's deed. Robert objected, challenging the chancellor's jurisdiction. He also questioned the sale price, claiming the market value of the property was $350,000. On June 23, 1996, Robert filed a notice of appeal from the May 31, 1996 order.

Also, on May 31, 1996, Boatmen's National Bank of Arkansas moved to intervene, alleging it had an interest in the property through mortgages and a November 1, 1993 judgment against Robert and his wife in the amount of $49,812. *See Kinkead v. Union Nat'l Bank*, 51 Ark. App. 4, 907 S.W.2d 154 (1995). Boatmen's asserted it had served a writ of garnishment on the chancery clerk for Robert's share of the proceeds from the sale. Robert responded by challenging Boatmen's standing. He argued Boatmen's had no title or possession of the property, and the lien was insufficient to give it standing. Boatmen's replied, claiming that, if its judgment against Robert was not satisfied by his share of the proceeds, its lien on the property would be lost when the sale to Carol and Jeannine was completed. Boatmen's further argued that the existing parties, Robert, Joyce, Carol, and Jeannine, had a common interest to avoid Boatmen's judgment, and its lien interest was left unprotected if Boatmen's was not allowed to intervene. Boatmen's urged it should be permitted to intervene, so it could protect its lien as the lien relates to both the property and the sale proceeds.

A hearing was held on the pending issues, and on August 5, 1996, the chancellor entered her order, allowing Boatmen's inter-

---

[1] For clarity and ease of writing, we hereafter refer sometimes to Robert only when Joyce also is included.

vention, directing distribution of the sale proceeds, and setting an appeal bond amount. Robert filed an amended notice of appeal to include the August 5, 1996 order. On September 10, 1996, the chancellor entered an order approving the commissioner's deed to Carol and Jeannine and directing payment of expenses. Further, the chancellor ordered the $35,222.07 due to Robert as his share of the proceeds to be held "pending further orders." Robert did not appeal from this order.

Now before this court is Boatmen's motion to dismiss Robert's appeal; Boatmen's argues Robert's notice and amended notice are not from final, appealable orders. Boatmen's cites the cases of *Bell v. Wilson*, 298 Ark. 415, 768 S.W.2d 23 (1989), and *Magness v. Commerce Bank*, 42 Ark. App. 72, 853 S.W.2d 890 (1993), for the proposition that Robert filed his appeal prematurely and should have filed from the court's order approving the deed entered on September 10, 1996. Robert counters by arguing the *Bell* and *Magness* decisions involved partitions in kind, but in situations where partitions are by sale, the court need not enter a later order approving the commissioner's deed. *See* Ark. Code Ann. §§ 18-60-416 -417 and 18-60-422 (1987). Alternatively, Boatmen's urges that its claims and interests have not been decided, nor does any court order mention any facts that would allow a piecemeal appeal under ARCP Rule 54(b). For this added reason, Boatmen's submits that the orders from which Robert appealed were not final and appealable. We agree.

The case of *Martin v. National Bank of Commerce*, 316 Ark. 83, 870 S.W.2d 738 (1994), is controlling here. In *Martin*, the chancellor granted Cynthia Martin what appeared to be an uncontested divorce and, upon doing so, the chancellor distributed the parties' marital property. The husband, George, later moved to set aside the decree, alleging fraud on Cynthia's part. George's aunt by marriage, Alpha Brown, claimed an interest in the Martins' property, and after learning of the divorce, Ms. Brown moved to intervene in the divorce action. Brown's intervention was granted. The chancellor later denied George's motion and George appealed from that ruling. George never challenged the chancellor's ruling granting Ms. Brown's intervention, nor did the chancellor dispose of Brown's claim as required under ARCP

Rule 54(b). Consequently, this court held no final, appealable order had been entered, and dismissed George Martin's appeal.

Here, Robert does not contest the lower court's decision allowing Boatmen's intervention, and while there was discussion of Boatmen's lien claim at the July 16, 1996 hearing, the record is far from clear that the chancellor ever disposed of it. In her August 5, 1996 order following the hearing, the chancellor, in granting Boatmen's intervention, mentioned that Boatmen's attorney announced that the Bank would release any lien it has on the subject property upon receipt of Robert's sale proceeds, but the chancellor never ruled on the lien issue. Boatmen's argues in its motion to dismiss Robert's appeal that the chancellor reserved her ruling on the issue, but Robert submits the chancellor declined to rule on Boatmen's lien claim because it was collateral to the issues raised in the Kinkeads' dispute. Robert admits some quandary over the chancellor's September 10, 1996 order which reflects a questionable amount of sale proceeds to be held for Robert and puzzling verbiage that his share shall be held "until further orders of the court." Robert claims he never received notice of the entry of the September 10 order, nor does he believe Boatmen's knew of its entry.

Our review of the record reflects confusion exists concerning Boatmen's lien claim. Obviously, its lien cannot be protected by any of the Kinkead parties, as has been suggested by Robert. Robert's share of the sale proceeds, as *now* determined, is insufficient to satisfy Boatmen's judgment, and Carol's and Jeannine's common interest is to take the property free and clear of Boatmen's lien. Boatmen's claim is not merely collateral to the Kinkeads' claims and should be decided when disposing of the Kinkeads' dispute.

We conclude that, based upon the confused state of the record before us, the only disposition that can be made is to dismiss this cause for failure to comply with the dictates of Rule 54(b). Because the record reflects the chancellor has not, as yet, entered a final order in this matter, we agree with Robert's alternative plea that his appeal should be dismissed without prejudice.

CORBIN, J., dissents.

DONALD L. CORBIN, Justice, dissenting. Although I do agree with the majority that neither the August 5, 1996 order nor the September 9 or 10, 1996 order actually states that Boatmen's is entitled to the Appellants' proceeds from the sale of the land, I believe the chancellor's order of August 5 says everything except that and, thus, I dissent. I believe that between the written order of August 5 and the chancellor's spoken rulings from the bench during the hearing on July 16, 1996, that it was understood that Boatmen's had a valid judgment lien on Appellants' portion of the real property and that it was entitled to the proceeds of the sale of Appellants' share of the land.

Additionally, I believe, contrary to the majority opinion, that the issue surrounding Boatmen's judgment lien was collateral to the action before the chancellor, which was an action in partition. An order may nonetheless be final for purposes of appeal provided that the only matters remaining in the trial court are collateral to or independent of the merits of the action or otherwise not an integral part of the action. This court has defined "collateral action" as "action that does not make any direct step toward final disposition of the merits of a case, will not be merged in the final judgment, is not an ingredient of the cause of action, and does not require consideration with the main cause of action." *Marsh & McLennan of Arkansas v. Herget*, 321 Ark. 180, 184, 900 S.W.2d 195, 198 (1995) (quoting *Pledger v. Bosnick*, 306 Ark. 45, 50, 811 S.W.2d 286, 290 (1991), *cert. denied*, 113 S. Ct. 3034 (1993), *reversed on other grounds*, *State v. Staton*, 325 Ark. 341, 925 S.W.2d 804 (1996)). Such collateral and ministerial orders need not be final for purposes of Arkansas Rule of Civil Procedure 54 nor Arkansas Rule of Appellate Procedure 2. *Pledger*, 306 Ark. 45, 811 S.W.2d 286. Also to be considered when determining whether a judgment is final is whether the order appealed from otherwise terminates the action as it was requested by the moving parties in the complaint on the issue of the suit. *Id.*

Applying the definition of "collateral action" set out above, it would appear that Boatmen's claim of a judgment lien on the property owned by Appellants, which was sold pursuant to Appellees' action in partition, would be collateral to the subject of the controversy, which was the partition of the land itself. Boat-

men's claim is independent to the merits of the action, as it concerned only the distribution of the proceeds of the partition sale. The claim certainly does not appear to be integral to the merits of the case, and this is evidenced by the chancellor's ruling during the hearing in which Boatmen's was allowed to intervene. The chancellor stated that Boatmen's claim really did not have anything to do with the merits of the lawsuit. The chancellor noted further that she had already decided everything that needed to be decided in the action for partition before Boatmen's intervened in the action.

The majority reasons that because the proceeds of Appellants' share of the land would not satisfy Boatmen's claim, Boatmen's was thus a necessary party entitled to intervene in order to protect its right to enforce the remaining amount of the judgment against the purchasers of the land, Appellees. This is an interesting interpretation in light of the fact that the August 5 order entered by the chancellor reflects:

> 4. Intervenor by and through its attorney announced at the hearing that it would release any lien it has on the subject property (so that the purchasers at the sale may take the property free and clear of any judgment lien) upon intervenor['s] receipt of the proceeds to which [Appellants] would have been entitled had there been no lien.

Apparently, Boatmen's had previously agreed that it would accept Appellants' proceeds from their portion of the property sold as satisfaction of its judgment against Appellants, at least as far as the Appellees-purchasers were concerned. Arguably, Boatmen's would still retain its lien against Appellants on that portion of the judgment that remained unsatisfied, as the judgment lien was against all property owned by Appellants within Pulaski County, Arkansas.

In sum, it appears to me, as it did initially to the chancellor, that Boatmen's claim is collateral to the subject matter of the suit, which was the partition sale of the land. This is especially apparent since the bank did not intervene until after the property had been sold, and the action in partition had been completed. More-

over, it was not necessary for Boatmen's to intervene in the partition action in order to protect its judgment against Appellants.

For the stated reasons, I respectfully dissent.